IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDY L. GOMEZ,<br><br>                           Petitioner,<br><br>      vs.<br><br>D. K. SISTO, Warden,<br><br>                           Respondent. | Case No. 2:08-cv-01317-JKS<br><br>MEMORANDUM DECISION |

Petitioner, Fredy Gomez, a state petitioner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Gomez is currently in the custody of the California Department of Corrections, incarcerated at the California State Prison, Solano, in Vacaville, California.  Respondent has filed an answer, and Gomez has filed a traverse.

STATEMENT OF THE FACTS

On January 19, 2005, Mark Miguel was working as a door attendant at the Torch Club in Sacramento when defendant approached him and asked about the cover charge. Defendant hesitated when Miguel told him it was four dollars, then told Miguel "not too many people like you around here, you know." Miguel ordered defendant to leave. After staring at Miguel for about 10 minutes, he did.

Defendant returned to the Torch Club the next night about 11:30 p .m., and again encountered Miguel at the door. Defendant asked Miguel if he was going to let him in, and Miguel responded by asking if he was "going to be good." When defendant failed to answer, Miguel told him he could not come in. Defendant repeatedly asked and motioned for Miguel to come outside, but Miguel ignored him. After about 10 minutes, Miguel

1

jumped up from the stool he had been sitting on, startling defendant, who assumed a martial arts-type fighting stance. Miguel then took defendant's arm and pushed him out the door. Defendant fell and Miguel held him on the ground for a few minutes. Miguel returned to his position at the door, and defendant walked to the end of the block, where he stared for several minutes at Miguel before leaving.

At 12:30 a.m., Miguel went inside the bar to tend to his other responsibilities. He collapsed some boxes and gathered them together. On his way out, he told the bartender, Don Jensen, that he was going to take the boxes to the dumpster. Once outside, he saw defendant standing alone on the sidewalk in front of the bar next door to the Torch Club. As Miguel walked towards the dumpster, defendant spotted him and lifted his shirt, exposing the butt of a gun. Defendant pulled a sawed-off shotgun out of his pants as he quickly walked toward Miguel. Defendant got within two or three feet from Miguel, pointed the shotgun at him and shot him in the lower abdomen. Miguel fell backwards toward the building, hitting his head as he slid down the wall. Miguel recovered his footing and began to fight with defendant over the gun, fearing he would shoot him again.

Hearing a loud bang, Jensen went outside to investigate and saw Miguel laying on the ground with his head covered in blood and defendant standing over him. Miguel called out to Jensen for help. Jensen struggled with defendant for the gun and managed to wrest it away from him, as Miguel crawled to safety. Defendant walked over to where Miguel was lying, kicked him on the side of the leg, and when Miguel opened his eyes, defendant fled on foot. Defendant was arrested later that evening.[1]

## PROCEDURAL HISTORY

On April 5, 2005, the Sacramento County District Attorney filed an amended complaint charging Gomez with: attempted murder with malice aforethought; possession of a short-barreled shotgun; assault with a firearm; and, being a felon in possession of a firearm. With respect to the charge of attempted murder, it was further alleged that Gomez committed the offense willfully, deliberately, and with premeditation, that he personally inflicted great bodily injury, and that he personally discharged a firearm. With respect to the charge of assault with a

---

[1] This statement of the facts was taken verbatim from the decision of the California Court of Appeal, Third District. *People v. Gomez*, 2007 WL 701567, 1 -2 (Cal.App. 3 Dist. 2007). Under Antiterrorism and Effective Death Penalty Act of 1996, the determination of these facts is presumed to be correct, and Alexander has the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

2

firearm, it was further alleged that Gomez personally inflicted great bodily injury and personally used a shotgun. It was also alleged that Gomez had a 1978 Oregon conviction for first degree robbery within the meaning of sections 667(b)-(i) and 1170.12.

On October 25, 2005, in a bifurcated trial, the jury found Gomez guilty of all counts and found true the firearm and great bodily injury allegations. The jury also found the prior-strike allegation to be true. On November 22, 2005, the court sentenced Gomez to a term of nine years in state prison and a consecutive, indeterminate term of thirty-nine years to life.

Gomez's conviction and sentence were affirmed on direct appeal on March 8, 2007. The California Supreme Court denied review on May 16, 2007. On April 24, 2007, Gomez filed a habeas petition in the Sacramento County Superior Court, which the court denied on July 25, 2007. On August 8, 2007, Gomez filed a supplemental habeas petition in the Sacramento County Superior Court, which the court denied on September 24, 2007. On August 18, 2007, Gomez filed a habeas petition in the California Supreme Court, which the court denied on March 26, 2008.

On June 11, 2008, Gomez filed the instant petition, raising six grounds for relief. On February 20, 2009, before this case was reassigned to Judge Singleton, the Honorable Lawrence K. Karlton granted Respondent's motion to dismiss, denied Gomez's motion for stay and abeyance, and ordered Grounds One, Four, and Five dismissed as unexhausted. Respondent was then directed to respond to Grounds Two, Three, and Six only. Respondent contends that Gomez's third ground for relief is unexhausted. Respondent does not assert any other affirmative defenses.

STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[3] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[4] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5] When a claim falls under the "unreasonable application" prong, a state court's application of

---

[2] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[3] *Williams*, 529 U.S. at 412.

[4] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[6] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[7] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[8] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[9] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[10]

In applying this standard, this Court reviews the last reasoned decision by the state court.[11] State appellate court decisions that affirm a lower court's opinion without explanation

---

[6] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[8] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[9] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[10] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[11] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

are presumed to have adopted the reasoning of the lower court.[12] Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal. If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[13] This is considered as the functional equivalent of the appeal process.[14] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15] This presumption applies to state trial courts and appellate courts alike.[16]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must presume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[17] The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of

---

[12] *Ylst*, 501 U.S. at 802-03.

[13] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

[14] *Id.* at 222.

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[17] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[18]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[19]

## DISCUSSION

As noted above, only three of Gomez's grounds remain before this Court: (Ground Two) the trial court erred by excluding evidence of Gomez's suicidal ideation; (Ground Three) trial counsel was ineffective for failing to present evidence of Gomez's blood alcohol level ("BAL") on the day of the shooting; and, (Ground Six) trial counsel was ineffective for failing to investigate and present evidence that Gomez suffered from Post Traumatic Stress Disorder ("PTSD").  Respondent claims that Gomez's third ground is unexhausted.  For the purposes of clarity and continuity, this Court will address Gomez's claims in order and will address Respondent's exhaustion argument in its discussion of ground three.

### (Ground Two)  Exclusion of Evidence Relating to Gomez's Suicidal Tendencies

In his second ground Gomez argues that the trial court erred by excluding evidence of his history of suicide attempts and suicidal thoughts.  Gomez alleges that this evidence would have helped to demonstrate that he lacked the requisite intent to kill and would have provided an

---

[18] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[19] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Cf. Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)."  *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 784 -785 (2011).

alternative explanation for his possession of a gun.  Following a hearing on the matter, the trial court excluded the evidence, finding that the admission of the evidence would possibly confuse and mislead the jury, and that the probative value of the evidence was substantially outweighed by the undue consumption of time.  Gomez raised this issue on direct appeal and, the California Court of Appeal which rejected it, holding:

> The trial court did not abuse its discretion. First, the evidence was not sufficiently proximate in time to shed significant light on defendant's state of mind at the moment he shot Miguel. In his pretrial motion, defendant offered evidence of an alleged suicide threat that occurred more than a year prior to the shooting incident. Two other incidents took place three months and two weeks prior, respectively. The last bit of evidence, offered midtrial, was the proffered statement of a witness at the Torch Club who thought she saw defendant try to stab himself minutes after he told bystanders that he shot Miguel.
> Second, as the events at Columbine High School and on September 11, 2001, vividly illustrate, suicidal and homicidal tendencies can certainly coexist simultaneously and are not inherently incompatible. In sum, defense counsel's premise that suicidal ideation negates the element of premeditation, was unsound. Accordingly, the trial court could reasonably have concluded that evidence of defendant's suicidal inclination was collateral, misleading and potentially confusing to the jury.[20]

Because the California Court of Appeal has rejected Gomez's argument, this Court may only grant relief if the Court of Appeal's decision was contrary to clearly established federal law or involved an unreasonable determination of the facts.[21]

It is well settled that, under the Sixth Amendment, an accused has the right to present witness testimony and other evidence in his defense.[22]   However, this right is abridged by rules of evidence that infringe upon a weighty interest of the accused and are arbitrary or

---

[20] *Gomez*, 2007 WL 701567 at 3.

[21] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[22] *See Washington v. Texas*, 388 U.S. 1, 19 (1967).

8

disproportionate to the purposes the rules are designed to serve.[23]  "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."[24]  States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials.[25]  "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate."[26]  In considering whether the exclusion of evidence violates due process, this Court must consider the probative value of the evidence on the central issue.[27]  Finally, assuming exclusion was error, it is subject to harmless-error analysis.[28]

According to the trial court and the California Court of Appeal, the admission of Gomez's suicidal tendencies was not particularly probative of his state of mind at the time that he shot Miguel and would have potentially been misleading or confusing to the jury. Furthermore, the Court of Appeal noted that suicidal tendencies are not incompatible with homicidal actions. Gomez has not shown that this reasoning is contrary to clearly established federal law. The Supreme Court has "never questioned the power of States to exclude evidence

---

[23] *Id.*

[24] *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988).

[25] *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

[26] *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff,* 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

[27] *United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007).

[28] *Neder v. United States*, 527 U.S. 1, 18 (1999).

through the application of evidentiary rules that themselves serve the interests of fairness and reliability–even if the defendant would prefer to see that evidence admitted."[29] Thus, this Court cannot say that the ruling of the California Court of Appeal rejecting this claim was contrary to established federal law or that it involved an unreasonable determination of the facts. Gomez is not entitled to relief on this ground.

<u>Grounds Three and Six: Ineffective Assistance of Counsel Claims</u>

In both his third and sixth claim, Gomez contends that he was denied his Sixth Amendment right to the effective assistance of counsel. Under *Strickland*, to demonstrate ineffective assistance of counsel, Alexander must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[30] As noted above, "federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the state court's decision 'was contrary to' federal law then clearly established in the holdings of this Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state

---

[29] *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This Court also notes that the trial court excluded evidence under California Evidence Code § 352, which reads as follows:
> The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

This rule is very similar to Federal Rule of Evidence 403, which reads:
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Given the striking similarity in these rules, it is even more evident that the California Court of Appeal's decision was consistent with clearly established federal law.

[30] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

court."[31]  Thus, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below the *Strickland* standard."[32]  "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."[33]  It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[34]

<u>(Ground Three)  Counsel Was Ineffective for Failing to Present Evidence of Gomez's Blood Alcohol Level</u>

Gomez claims that his trial counsel was ineffective for failing to properly investigate and submit evidence of his BAL on the day of the shooting.  When Gomez was admitted to the hospital, almost three hours after the shooting, he had a BAL of 0.1462 percent.  Gomez claims that this piece of evidence was relevant to prove that he did not form the requisite intent to kill Miguel.  Gomez seems to make two arguments in his petition to this Court: 1) that his trial counsel should have reviewed the records and discovered this piece of evidence sooner; and, 2) once the prosecution stipulated to the admission of this evidence, trial counsel should have presented this evidence to the jury.

<u>Exhaustion</u>

---

[31] *Harrington*, 131 S. Ct. at 784-785.

[32] *Id.*

[33] *Id.* (emphasis in original).

[34] *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

11

Respondent argues that this claim is unexhausted because Gomez did not present the issue to the California courts in his habeas petitions. This Court may not consider claims that have not been fairly presented to the state courts.[35] Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[36] A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim.[37] A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim.[38] In the Ninth Circuit, a petitioner must make the federal basis of the claim explicit either by referencing specific provisions of the federal Constitution or statutes, or citing to federal case law.[39]

Contrary to Respondent's claim, Gomez need not raise this issue to the highest state court in a petition for habeas corpus as long as he has previously raised the issue and given the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[40] The record shows that Gomez raised this claim of ineffective assistance of counsel in both his direct

---

[35] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[36] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[37] *See* 28 U.S.C. § 2254(e); *Weaver v. Thompson,* 197 F.3d 359, 364 (9th Cir. 1999).

[38] *Duncan,* 513 U.S. at 365-66.

[39] *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000), *amended by Lyons v. Crawford*, 247 F.3d 904 (9th Cir. 2001).

[40] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

appeal to the California Court of Appeal and in his petition for review to the California Supreme Court. Thus, although Gomez may have not raised this issue in his state-court habeas petitions, he fairly exhausted this claim by raising it on direct appeal.

## Merits

The California Court of Appeal rejected this claim, holding:

> On the fifth day of trial, defense counsel sought to admit the results of blood tests conducted at the Veterans Affairs Hospital almost three hours after the shooting, which indicated that defendant's blood alcohol level was 0.1462 percent. Defense counsel offered the evidence in furtherance of his theory of diminished capacity, owing to intoxication. The prosecutor objected to the admission of the records on timeliness grounds, and questioned the reliability of the test results. The prosecutor also noted that there were other statements in the same records that would favor the People's case. The court initially denied defendant's request to introduce this evidence.
> Later that same day, the prosecutor agreed to stipulate to the results of the blood alcohol test, but noted that he would also introduce evidence from the same records that indicated defendant was comfortable, alert and oriented when he entered the hospital. The court indicated it would permit defense counsel to introduce the results of the blood alcohol test and the prosecution to introduce the observations concerning defendant's demeanor.
> Subsequently, the court asked defense counsel if he wished to reopen his case and present the hospital records. Counsel replied that he was withdrawing his motion to have the evidence admitted, stating "at this point for tactical reasons I believe it would be a distraction to the jury."
> Defendant now asserts that defense counsel was incompetent for two reasons: (1) he should have properly reviewed the records earlier in the proceedings, so as to avoid a timeliness objection; and (2) he fell below the standard of care in withdrawing his motion to have the records admitted . . . .
> Clearly, no harm resulted from counsel's failure to review the records in a timely fashion, since the trial court was prepared to admit them based on the prosecutor's stipulation. Thus the only issue is whether counsel's withdrawal of his motion is explainable as a reasonable choice of tactics.
> By the time the issue of the admissibility of the hospital records arose during the trial, the defense had already introduced copious evidence relating to defendant's intoxication at the time of the shooting. Defense witnesses recounted how defendant was drinking as early as seven hours before the shooting and continued throughout the night. The defense also presented testimony that defendant was intoxicated four hours prior to the shooting, and appeared to be even more so within an hour after the shooting. Evidence that defendant's blood alcohol level was 0.14 percent was thus cumulative of the observations of defendant's witnesses. However, the same records contained a poison

13

> pill. Defendant was described as "comfortable at rest, alert and oriented," when he entered the hospital, and it was noted "that he daily consumed six to twelve beers." Thus, although the hospital records provided further evidence of defendant's intoxication, they also contained damaging evidence that he consumed alcohol on a regular basis and was able to function normally after having consumed great quantities of beer. **FN3**
>
> **FN3**. Defendant does not dispute the propriety of the court's ruling that if the blood alcohol test were introduced, the observations of the hospital's staff could also be admitted.
>
> Defense counsel cannot be faulted for choosing the lesser of two evils. There is a " ' " strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ' might be considered sound trial strategy.' " ' " ( People v. Burnett (1999) 71 Cal.App.4th 151, 180, quoting People v. Bunyard (1988) 45 Cal.3d 1189, 1215 and Strickland v. Washington (1984) 466 U.S. 668, 689 [80 L.Ed.2d 674, 694].) Because there is a plausible tactical explanation for defense counsel's act of withdrawing his motion to admit the hospital records, defendant's ineffective assistance claim must fail.[41]

Because the California Court of Appeal has rejected Gomez's argument, this Court may only grant relief if the Court of Appeal's decision was contrary to clearly established federal law or involved an unreasonable determination of the facts.[42]

Gomez first claims his trial counsel should have reviewed the files more thoroughly and discovered the evidence of his high BAL earlier. As the California Court of Appeals aptly noted, Gomez is unable to show that his counsel's performance prejudiced him, since the trial court was prepared to admit the BAL evidence after the prosecution stipulated to its admission. Thus, the failure of Gomez's attorney to discover this evidence sooner had no effect on its admissibility.

---

[41] *Gomez*, 2007 WL 701567 at 4-5.

[42] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

Accordingly, this Court cannot say that Gomez was prejudiced by his counsel's late discovery of this evidence. Gomez is not entitled to relief under this theory.

Next, Gomez claims his trial counsel was ineffective for failing to introduce the BAL evidence to the jury once the court agreed to admit it. The California Court of Appeals reasoned that, had Gomez's trial counsel admitted evidence of his BAL, the prosecution would have been allowed to introduce evidence that suggested Gomez was able to function normally after having consumed great quantities of beer. Specifically, the prosecution could have submitted evidence that despite his high BAL, Gomez was comfortable, alert and oriented when he entered the hospital. Gomez also told the hospital staff that he drank six to twelve beers on a daily basis. Thus, the Court of Appeal concluded that Gomez's trial counsel made a reasoned decision not to admit the evidence of Gomez's high BAL.

Gomez has failed to show either that his counsel's performance was deficient in any way, or that he was prejudiced by his counsel's decision not to introduce this evidence. Gomez "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[43] "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[44] Gomez has failed to carry this burden. The record indicates that Gomez's counsel made a calculated decision not

---

[43] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

[44] *Id.* (quoting *Strickland*, 466 U.S. at 689).

to expose the jury to evidence that Gomez had a high tolerance for alcohol, a piece of evidence that could have damaged his defense.[45]

Gomez has also failed to show that had his counsel submitted the evidence, the outcome of the case would likely have been different. The record indicates that the BAL evidence suggesting Gomez was intoxicated at the time of the killing was undermined by evidence of his high tolerance for alcohol. Accordingly, this Court cannot say that the ruling of the California Court of Appeal rejecting this claim was contrary to established federal law or that it involved an unreasonable determination of the facts. Gomez is not entitled to relief on this ground.

### (Ground Six)  Counsel Was Ineffective for Failing to Introduce Evidence of Post Traumatic Stress Disorder

In his final ground, Gomez asserts that his trial counsel was ineffective for failing to investigate and introduce evidence that Gomez had been diagnosed with PTSD. Gomez refers to a letter written to his trial counsel by his friend, Nora Ybarbo, informing counsel that Gomez suffered from PTSD. Gomez also points to a letter written by his psychotherapist to the trial court for the purposes of sentencing. Gomez asserts that his counsel should have investigated his PTSD and contacted his psychotherapist, all in an effort to introduce evidence concerning the effect of PTSD on his mental state at the time of the killing. Gomez raised this claim in his petition to the Sacramento Superior Court, which held:

> The petition for writ of habeas corpus has been filed and considered. It is DENIED.
> Petitioner contends that his counsel was ineffective because counsel failed to investigate and to introduce evidence concerning petitioner's post traumatic stress

---

[45] *Strickland*, 466 U.S. at 690 (An attorney's strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

> disorder and its effect on his mental state. In evaluating a claim of ineffective assistance of counsel, the court applies a two-part test:
>
> > "[A] defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.'" (*In re Harris* (1993) 5 Cal.4th 813, 832-833, citing *Strickland v. Washington* (1984) 466 U.S. 668 and *People v. Pope* (1979) 23 Cal.3d 412; see also *In re Scott* (2003) 29 Cal.4th 783, 811-812.)
>
> In the second part of the test, a petitioner "must also show prejudice flowing from counsel's performance or lack thereof. [cites omitted] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [cites omitted]" (*Ibid.*)
>
> Finally, courts are advised that it is frequently easier to resolve an ineffective assistance claim by looking first at the issue of prejudice; if none is established, then it will be unnecessary to consider counsel's performance. (*In re Fields* (1990) 51 Cal.3d 1063, 1077.)
>
> Petitioner alleged that his counsel failed to investigate his stress disorder and to present evidence regarding it. The court's records fail to support the allegation as to investigation. The trial transcript and sentencing transcript show that counsel consulted experts to determine what petitioner's mental state was and that this consultation occurred prior to trial. Under Penal Code §§ 22 and 28 evidence of voluntary intoxication or mental disorder may not be admitted to show that the defendant lacked the capacity to form the requisite intent. Instead, it may be used only to show whether a defendant actually formed the intent in question. The question of whether the available evidence would actually show what defendant wanted would be a matter of trial tactics. Under the ineffective assistance standard, the court does not second-guess counsel's tactical choices.[46]

Because the Sacramento Superior Court has rejected Gomez's argument, this Court may only grant relief if that decision was contrary to clearly established federal law or involved an unreasonable determination of the facts.[47]

The Sacramento Superior Court noted that the record indicated that Gomez's trial counsel consulted with experts to determine what petitioner's mental state was and that this consultation

---

[46] Lodged Doc. No. 5.

[47] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

17

occurred prior to trial. It is unclear from the record whether counsel's investigation specifically addressed Gomez's PTSD. However, because Gomez has not submitted any evidence that his counsel did not investigate his PTSD, he has failed to rebut the conclusion of the Sacramento Superior Court with clear and convincing evidence.[48] Accordingly, Gomez has failed to show that counsel was deficient for failing to investigate his PTSD. Gomez is not entitled to relief under this theory.

The Sacramento Superior Court also noted that it was precluded from second guessing trial counsel's tactical choice not to introduce this evidence to the jury. The Supreme Court has held that attorney's strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[49] While the letter from Gomez's psychotherapist certainly suggests that Gomez was unstable at the time of the shooting, her letter does not address whether Gomez formed the intent to kill Miguel, thus, this Court cannot say that had she testified the result would likely have been different.[50] Accordingly, Gomez has failed to show that the decision of the Sacramento Superior Court was contrary to established federal law or that it involved an unreasonable determination of the facts. Gomez is not entitled to relief on this ground.

## CONCLUSION AND ORDER

---

[48] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Gomez could submit a sworn statement from his trial attorney or the experts who his attorney interviewed, verifying that his counsel's pre-trial investigation into Gomez's mental state did not address PTSD.

[49] *Strickland*, 466 U.S. at 690.

[50] This Court notes that Gomez has not included a sworn document detailing whether she would have testified and the content of her proffered testimony concerning the effect of Gomez's PTSD on his mental state at the time of the shooting.

Gomez is not entitled to relief under any ground raised in the Petition. Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[51] Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.[52]

The Clerk of the Court is to enter judgment accordingly.

Dated: March 25, 2011

                                      /s/ James K. Singleton, Jr.
                                      **JAMES K. SINGLETON, JR.**
                                        United States District Judge

---

[51] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).

[52] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.